NOT FOR PUBLICATION                                                                                           CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARBARA CARRINO,<br>                       Plaintiff,<br>v.<br>TOWNSHIP OF WEEHAWKEN, et al.,<br>                       Defendants. | Civil Action No.: 07-4817 (JLL)<br><br>OPINION |

**LINARES**, District Judge.

This case arises out of an incident which occurred on February 9, 2005 and resulted in Plaintiff's arrest by Weehawken Police Detective Juan Mejia and Patrol Officer Kaye Brancaccio. In light of this incident, Plaintiff has filed a Complaint against the Township of Weehawken, the Weehawken Police Department, the Office of the Chief of Police, Detective Juan Mejia and Patrol Officer Kaye Brancaccio, alleging various violations of her civil rights. Currently before the Court is Defendants' joint motion for summary judgment brought pursuant to Federal Rule of Civil Procedure 56. The Court has considered the submissions made in support of and in opposition to the instant motion. No oral argument was heard. Fed. R. Civ. P. 78. Based on the reasons that follow, as well as those set forth by the Court on the record on September 1, 2009, Defendants' motion is **granted.**

**BACKGROUND**

The relevant facts are not in dispute.[1] Although the Court recited the relevant undisputed facts on the record on September 1, 2009, for purposes of completeness, below is a brief synopsis of same which includes citations to Defendants' Statement of Material Facts.[2]

On February 9, 2005, the Weehawken Police Department received a report regarding a breaking and entering which had occurred at 704 Boulevard East in Weehawken, New Jersey. (Def. 56.1 Statement, ¶ 1). Plaintiff, Barbara Carrino, coincidentally lived on the same floor of the apartment building where the incident occurred. (Id., ¶ 4).

A complaint of the incident was referred to Detective Juan Mejia of the Weehawken Police Department, who, with the assistance of Patrol Officer Kaye Brancaccio, began an investigation of the alleged burglary on February 9, 2005. (Id., ¶¶ 2-3). On that date, while Detective Mejia interviewed certain witnesses and/or suspects at the crime scene, Plaintiff left her apartment and interrupted his interview by shouting obscenities and claiming that she was conducting her own investigation into the crime. (Id., ¶ 5). Detective Mejia instructed Plaintiff to refrain from speaking with the witnesses and/or suspects. (Id., ¶ 6). In response, Plaintiff became enraged and began yelling at the officers. (Id., ¶ 7). As a result, Detective Mejia asked the Plaintiff to return to her apartment. (Id., ¶ 8). Plaintiff refused and continued yelling at the officers. (Id., ¶ 9). Once again, Detective

---

[1] The Court notes that although Plaintiff has submitted a series of exhibits in opposition to Defendants' motion for summary judgment – including police reports, letters to her former attorney, municipal court documents, etc. – Plaintiff chose not to file an opposition brief or a statement of material facts in response to that submitted by Defendants. Local Civil Rule 56.1(a) makes clear that "any material facts not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1.

[2] The Court's September 1, 2009 recitation of the facts is hereby incorporated by reference.

Mejia asked Plaintiff to return to her apartment. (Id.). Plaintiff refused and began flailing her arms while continuing to yell profanities at the officers. (Id., ¶ 10). At that point, Detective Mejia warned Plaintiff that she would be arrested for obstruction if she continued interfering with his investigation and did not return to her apartment. (Id., ¶ 11). In response to Plaintiff's continued belligerent conduct, Detective Mejia attempted to arrest her, but she resisted, refusing to place her arms behind her back. (Id., ¶¶ 14, 15). Detective Mejia was only able to cuff one of Plaintiff's wrists before she pulled away. (Id., ¶ 15).

Plaintiff then wrestled Detective Mejia down the hall and into her apartment. (Id.). While the struggle continued, Officer Brancaccio followed Plaintiff and Detective Mejia into Plaintiff's apartment and radioed for assistance. (Id.). Shortly thereafter, Officer Henry Zeeb responded to the scene. (Id.). During this time, Plaintiff had three dogs in her apartment. (Id., ¶ 16). As the struggle continued, Officer Brancaccio was bitten on her leg by one of Plaintiff's dogs. (Id.). Plaintiff proceeded to punch Detective Mejia on the right side of his head. (Id., ¶ 17). Eventually, Officer Zeeb assisted in placing both handcuffs on Plaintiff, after which Plaintiff was transported to police headquarters for processing. (Id.).

In light of the foregoing, Plaintiff was charged with: (1) obstruction, (2) two counts of assault, and (3) resisting arrest and eluding officers. (Id., ¶ 18). A separate complaint was filed by Officer Brancaccio against Plaintiff for aggravated assault, which was later amended to simple assault. (Id., ¶ 19). Plaintiff also filed her own complaint against Detective Mejia for assault. (Id., ¶ 20). The three complaints were consolidated and tried before Municipal Court Judge Emil A. Del Baglivo, J.M.C., on May 11, 2006, June 8, 2006 and June 12, 2006. (Id., ¶ 21). Plaintiff was ultimately found guilty of all charges and was sentenced to six (6) months in jail. (Id., ¶¶ 29, 38).

Detective Mejia was found not guilty. (Id., ¶ 35).

On February 5, 2007, Plaintiff commenced the instant cause of action in the Superior Court of New Jersey, Law Division, Hudson County. Count One of her Complaint alleges that Defendants Township of Weehawken Police Department and the Office of the Chief of Police (hereinafter "Police Department Defendants") are subject to § 1983 liability based on their failure to properly train their officers. Count Two alleges that Defendants Mejia and Brancaccio violated her constitutional rights by subjecting her to excessive force during the course of her arrest. Count Three of Plaintiff's Complaint alleges that Defendants Township of Weehawken, Weehawken Township Police Department, and the Office of the Chief of Police are subject to § 1983 liability for creating an illegal policy or procedure which resulted in a deprivation of Plaintiff's constitutional rights.[3]

On October 4, 2007, Defendants filed a Notice of Removal with this Court, pursuant to 28 U.S.C. § 1441. This Court's jurisdiction is premised on 28 U.S.C. § 1331.

## LEGAL STANDARD

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as

---

[3] To the extent that Plaintiff seeks to assert claims arising under state law in this action, the Court declines to exercise supplemental jurisdiction over these claims because all federal claims over which the Court has original jurisdiction are being dismissed. See 28 U.S.C. § 1367(c)(3); Growth Horizons, Inc. v. Del. County, Pa., 983 F.2d 1277, 1284 (3d Cir. 1993) (directing district courts to "take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants' " when deciding whether or not to exercise supplemental jurisdiction over state law claims where all federal claims have been dismissed). Plaintiff may raise such state law claims in state court, should she desire to do so. This Court makes no findings as to whether any such state law claim(s) would succeed.

a matter of law." Fed. R. Civ. P. 56(c).

On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. Id. at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See, e.g., Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

## DISCUSSION

**I.   Section 1983**

Plaintiff claims that Defendants, while acting under color of state law, deprived Plaintiff of her civil rights, in violation of 42 U.S.C. § 1983.[4] To establish § 1983 liability, a plaintiff must show "that the official, acting under color of state law, caused the deprivation of a federal right."

---

[4] Section 1983 states in relevant part: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)).[5] This is because § 1983 itself is not a source of substantive rights, but provides a vehicle for vindicating the violation of rights created by the United States Constitution or federal law. See Graham v. Connor, 490 U.S. 386, 393-94 (1989); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-7 (3d Cir. 1997). Although Plaintiff's Complaint does not always identify the specific constitutional right(s) that Defendants have allegedly violated, the Court construes Plaintiff's Complaint as setting forth various Fourth Amendment claims.

### A. Application of Heck v. Humphrey

As a preliminary matter, the Court notes that Defendants seek dismissal of Plaintiff's Complaint on the basis that it is barred by Heck v. Humphrey, 512 U.S. 477 (1994). In support of this position, Defendants argue – in a conclusory fashion – that Plaintiff's claims are barred given the municipal court's determination that Plaintiff was guilty of the charges brought against her. In Heck, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Heck, 512 U.S. at 486-87.

The alleged unlawfulness of Defendants' actions in this case would not, however, render Plaintiff's municipal court conviction invalid. Plaintiff was found guilty of obstruction, assault and

---

[5] Defendants do not dispute that they are state actors for purposes of this § 1983 cause of action.

resisting arrest and eluding officers. Count One of her Complaint alleges that several defendants are liable for failing to properly train the officers who effectuated Plaintiff's arrest. Count Two alleges that Defendants Mejia and Brancaccio violated Plaintiff's constitutional rights by subjecting her to excessive force during the course of her arrest. Count Three alleges that Defendants Township of Weehawken, Weehawken Township Police Department, and the Office of the Chief of Police are subject to § 1983 liability for creating an illegal policy or procedure which resulted in a deprivation of Plaintiff's constitutional rights. Putting aside the merits of such claims, it does not appear that the unlawful actions alleged would – even if true – render Plaintiff's underlying conviction and/or sentence invalid.[6] For instance, Plaintiff does not allege that she was falsely arrested; rather, she alleges that Defendants effectuated a lawful arrest in an unlawful manner.[7] As a result, Defendants have failed to meet their burden in establishing that Heck v. Humphrey bars Plaintiff's claims. Summary judgment on such a basis is, therefore, denied.

---

[6] See generally Heck, 512 U.S. at 487 n. 6 ("An example of this latter category – a § 1983 action that does not seek damages directly attributable to conviction or confinement but whose successful prosecution would necessarily imply that the plaintiff's criminal conviction was wrongful – would be the following: A state defendant is convicted of and sentenced for the crime of resisting arrest, defined as intentionally preventing a peace officer from effecting a lawful arrest. He then brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures. In order to prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted. Regardless of the state law concerning res judicata the § 1983 action will not lie.") (internal citations omitted).

[7] See, e.g., Nelson v. Jashurek, 109 F.3d 142, 145 -146 (3d Cir. 1997) (discussing Heck and noting that "Nelson does not charge that Jashurek falsely arrested him. Instead, Nelson charges that Jashurek effectuated a lawful arrest in an unlawful manner. Accordingly, while we do not doubt that even on the facts as presented by Nelson it will be difficult for him to establish liability in this case, we do not see why a judgment in his favor would throw the validity of his conviction into doubt.").

**B.     Fourth Amendment Claims**

<u>Count One – Failure to Train</u>

Plaintiff claims that the Police Department Defendants are subject to liability for the individual defendants' constitutional violations based on their failure to properly train their officers. Municipal bodies, such as the Police Department, may only be held liable under § 1983 in limited circumstances. The Police Department may not be held liable under § 1983 under a theory of respondeat superior. See, e.g., Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690-91 (1978); Brennan v. Norton, 350 F.3d 399, 427 (3d Cir. 2003). Thus, the Police Department Defendants cannot be held liable for merely employing an individual who commits a constitutional violation.

Instead, the Police Department Defendants will be subject to § 1983 liability where they have created a policy or custom which has caused Plaintiff's constitutional deprivations, see, e.g., Monell, 436 U.S. at 694; Brennan, 350 F.3d at 427, or where the failure to adequately train their employees evidences a deliberate indifference to the rights of others, see, e.g., City of Canton, Ohio v. Harris, 489 U.S. 378, 387-89 (1989); Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir.1997) ("in the absence of an unconstitutional policy, a municipality's failure to properly train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983"). In essence, the municipal body must be the "moving force" behind the constitutional injury to the plaintiff. See, e.g., City of Canton, 489 U.S. at 379 (stating that municipalities can only be held liable under section 1983 where its policies are the "moving force" behind the constitutional violation (citations omitted)).

Plaintiff claims that the Police Department Defendants are liable for the officers'

constitutional violations because they failed to properly train the officers named as individual defendants. Plaintiff's claim against the Police Department Defendants is, in essence, a respondeat superior claim which cannot form the basis for § 1983 liability. See, e.g., Monell, 436 U.S. at 690-91; Brennan, 350 F.3d at 427. Moreover, Plaintiff fails to: (1) establish that the Police Department Defendants knew of and were deliberately indifferent to any training deficiency, (2) identify examples of specific training that the Police Department Defendants failed to provide, and/or (3) establish that any such training deficiencies caused Plaintiff's injuries. See, e.g., Reitz, 125 F.3d at 145 ("A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."); Vasquez v. City of Jersey City, No. 03-5369, 2006 WL 1098171, at *7 (D.N.J. Mar. 31, 2006) (finding that city was not liable under section 1983 for failing to train its employees where plaintiff failed to show that city knew of purported training deficiency); Bradshaw v. Twp. of Middletown, 296 F. Supp. 2d 526, 549 (D.N.J. 2003), aff'd 145 Fed. Appx. 763, 768 (3d Cir. 2005) (affirming district court's dismissal of § 1983 claim against township for failure to train where plaintiff failed to identify "any examples of specific training that the Township failed to provide").

By contrast, it is undisputed that: (1) Plaintiff was repeatedly asked to return to her apartment but refused to do so,[8] (2) Plaintiff was warned by the officers that she would be arrested for obstruction if she continued to interfere with their investigation by failing to return to her apartment,[9]

---

[8] Def. 56.1 Statement, ¶¶ 8-9.

[9] Def. 56.1 Statement, ¶ 11.

(3) Plaintiff repeatedly resisted arrest,[10] and (4) Plaintiff was ultimately found guilty of the crimes for which she was arrested. Although the Court has reviewed the various exhibits submitted by Plaintiff in opposition to Defendants' motion, Plaintiff has failed to identify <u>any</u> specific facts of record which would contradict the facts set forth by Defendants or would otherwise substantiate her claim. <u>See, e.g.</u>, <u>Childers v. Joseph</u>, 842 F.2d 689, 694-695 (3d Cir. 1988) ("Where a party opposing a motion for summary judgment has the burden of persuasion, and the moving party has identified sufficient facts of record to demonstrate that no genuine issue of material fact remains, the nonmoving party is obliged to identify those facts of record which would contradict the facts identified by the movant."); <u>see generally</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986) (noting that where nonmoving party bears the burden of proof at trial, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "). Thus, Defendant's motion for summary judgment as to Count One is granted.

Count Two – Use of Excessive Force

Count Two alleges that Defendants Mejia and Brancaccio violated her constitutional rights by subjecting her to excessive force during the course of her arrest. Such claims are properly analyzed under the Fourth Amendment, which prohibits the government from subjecting an individual to "unreasonable searches and seizures." U.S. Const. Amend. IV. Where a plaintiff is claiming that an officer used excessive force during the course of an arrest, this claim is properly analyzed under the Fourth Amendment's objective reasonableness standard. <u>See, e.g.</u>, <u>Graham</u>, 490 U.S. at 394-97.

---

[10] Def. 56.1 Statement, ¶¶ 14, 15.

This inquiry requires a "careful balancing of 'the nature and quality of the intrusion on an individual's Fourth Amendment interests' against the countervailing governmental interests at stake." See Graham, 490 U.S. at 396 (quotations omitted). In making this inquiry, the Court must examine the totality of the circumstances involved in each case. See id. In particular, the Court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.; see also Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004) (discussing these factors). The Third Circuit has set forth the following additional factors for consideration: the possibility that the individual is violent or dangerous; the duration of the action; whether the action takes place during the course of an arrest; the possibility that the individual is armed; and the number of persons that police must control at one time. See Rivas, 365 F.3d at 198 (citing Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).

Furthermore, in conducting this analysis, courts must be mindful that police officers are often required to make split-second judgments in tense and uncertain circumstances. See, e.g., Graham, 490 U.S. at 396-97. Thus, the Court must evaluate whether the use of force was reasonable by considering the conduct of the officer from an on-scene perspective, including the information available to the officer at the time force was applied. See id. at 396; see also Mellott v. Heemer, 161 F.3d 117, 122 (3d Cir. 1998) (stating that reasonableness in excessive force inquiry is evaluated by considering the perspective of a reasonable officer on the scene). " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' violates the Fourth Amendment." Graham, 490 U.S. at 396 (internal citation omitted). The right to make an arrest necessarily carries with it the right to use some degree of force to effect that arrest. See Graham, 490

U.S. at 396.

Here, Plaintiff claims that Defendants Mejia and Brancaccio used "unreasonable" and "excessive" force in effectuating her arrest. (Compl., ¶ 2). In particular, Plaintiff claims that Defendants hit her, forced her into her living room, and yanked her left arm behind her back while threatening to "snap her arm" if she did not cooperate, all during the course of her arrest. (Id.). Such measures, according to Plaintiff, were unreasonable, excessive and unjustified under the circumstances. (Id.). Defendants Mejia and Brancaccio ask the Court to grant summary judgment on this claim on the basis that it is barred by the municipal's court's determination of Plaintiff's guilt and by the admissions made by Plaintiff in connection with her criminal trial. (Def. Br. at 29). Although Defendants cite to no binding legal authority in support of this position,[11] the Court finds that summary judgment as to Count Two is, nevertheless appropriate, based on the reasons that follow.

As a preliminary matter, the Court notes that such claims are nothing more than <u>allegations</u>. Plaintiff has provided no evidence – in the form of a sworn statement or otherwise – in support of such allegations. Federal Rule of Civil Procedure 56(e)(2) directs, in relevant part, the following:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations of denials in its own pleadings; rather, its response must – by affidavits or as otherwise provided in this rule – set out specifics facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). Because Plaintiff has failed to substantiate her claim of excessive force

---

[11] Defendants cite to <u>Garrison v. Porch</u>, No. 04-1114, 2007 WL 776799 (D.N.J. Mar. 9, 2007), a decision which is neither published nor binding on this Court.

with anything more than pure speculation, summary judgment on this claim is appropriate on this basis alone. Moreover, having reviewed the evidence contained in the record, including the various documents submitted by the Plaintiff, the Court has no reason to find that the force employed by the officers in effectuating her arrest was anything but reasonable. By contrast, it is undisputed that: (1) Plaintiff was repeatedly asked to return to her apartment, but she refused to do so,[12] (2) Plaintiff was warned that she would be arrested if she failed to follow the officers directions,[13] (3) Plaintiff continued to refuse to return to her apartment and, instead, became belligerent and began yelling profanities and flailing her arms,[14] (4) Plaintiff refused to place her arms behind her back,[15] (5) as a result, a struggle ensued,[16] (6) Plaintiff punched Detective Mejia on the right side of his head and struck him several times,[17] and (7) handcuffs were ultimately placed on Plaintiff, after which she was transported to police headquarters for processing.[18] In light of the foregoing, the Court grants Defendants' motion for summary judgment as to Count Two.

---

[12] Def. 56.1 Statement, ¶¶ 9-11.

[13] Def. 56.1 Statement, ¶ 11.

[14] Def. 56.1 Statement, ¶ 10.

[15] Def. 56.1 Statement, ¶¶ 14, 15.

[16] Def. 56.1 Statement, ¶ 15.

[17] Def. 56.1 Statement, ¶ 17.

[18] Def. 56.1 Statement, ¶ 17.

Count Three – Execution of Official Policy

Count Three of Plaintiff's Complaint alleges that Defendants Township of Weehawken, Weehawken Township Police Department, and the Office of the Chief of Police are subject to § 1983 liability for creating an illegal policy or procedure which resulted in a deprivation of Plaintiff's constitutional rights. A local government may be subject to § 1983 liability where its policy or custom caused Plaintiff's constitutional deprivations. See, e.g., Monell, 436 U.S. at 694; Brennan, 350 F.3d at 427. The Third Circuit has specified that "policy is made by an official statement of a 'decisionmaker possessing final authority to establish municipal policy,' and custom can be shown by the presence of a course of conduct that 'is so well-settled and permanent as virtually to constitute law.'" Chernavsky v. Twp. of Holmdel Police Dept., 136 Fed. Appx. 507, 509 (3d Cir. 2005) (citing Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.1990)).

Plaintiff has failed to <u>allege</u> – with any level of specificity – the existence of any particular official policy or custom, created by the Township of Weehawken, Weehawken Township Police Department, and/or the Office of the Chief of Police, which resulted in a deprivation of Plaintiff's constitutional rights. Beyond that, <u>none</u> of the evidence submitted by Plaintiff even suggests – much less demonstrates – the existence of any such policy or custom. To the contrary, the essence of Plaintiff's claim relates to the use of force employed by the officers in effectuating her arrest. Summary judgment as to Count Three is, therefore, granted.

## CONCLUSION

Based on the reasons set forth above, Defendants' motion for summary judgment is **granted** as to Plaintiff's federal claims. To the extent Plaintiff has attempted to set forth claims under state law, such claims are dismissed without prejudice inasmuch as this Court declines to exercise

supplemental jurisdiction over same.[19]  This case is closed.

    An appropriate Order accompanies this Opinion.

DATE: September 21, 2009

/s/ Jose L. Linares
JOSE L. LINARES,
UNITED STATES DISTRICT JUDGE

---

[19] See supra note 3.